UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
J & J SPORTS PRODUCTIONS, INC.,     :
     :
     Plaintiff,     :
     :      **REPORT AND RECOMMENDATION**
     - against -     :
     :      17 Civ. 2636 (WFK) (VMS)
RK SOTO ENTERPRISES INC.     :
D/B/A RAZOR'S BAR & LOUNGE,     :
KATHERINE SOTO,     :
     :
     Defendants.     :
-------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff J & J Sports Productions, Inc. ("J & J") brings this action against defendants RK

Soto Enterprises, Inc. d/b/a Razor's Bar & Lounge ("RK Soto") and Katherine Soto (together,

the "Defendants"), alleging that Defendants intercepted a transmission of the "May 3, 2014

Welterweight Championship fight Program between Floyd Mayweather vs. Marcos Maidana,

including undercard or preliminary bouts" (the "Event"), and that they broadcast it at their bar in

violation of the Federal Communications Act of 1934 (the "FCA"), codified as amended, 47

U.S.C. §§ 553, 605.

Now before this Court is J & J's renewed motion for default judgment against the

Defendants for their failure to answer or otherwise respond to the amended complaint filed on

July 2, 2018 (the "Amended Complaint"). J & J seeks judgment of $10,391.55 (trebled statutory

damages), plus costs against Defendants. J & J demands this relief based on filings which raise

concerns regarding the propriety of service and based upon conclusory allegations similar to

those which have been criticized by judges in this and other districts.

For the reasons explained below, this Court respectfully recommends that J & J's motion for default judgment be denied and that the Amended Complaint be dismissed without prejudice. This Court further recommends that J & J be given 30 days to replead if it can address the issues identified below.

## I.    BACKGROUND

### A. Factual Background

J & J is a foreign corporation organized under the laws of the State of California.  ECF No. 22, Amended Complaint ("Am. Compl.") ¶ 4.  RK Soto is alleged to be a domestic corporation organized under the laws of the State of New York that is authorized to transact business as "Razor's Bar & Lounge" located at 87 Central Avenue, Brooklyn, New York.  Am. Compl. ¶ 5.  Ms. Soto, who is listed as the Principal on RK Soto's expired liquor license with the New York State Liquor Authority, is alleged to be an "officer, director, shareholder and/or principal" of RK Soto. Am. Compl. ¶ 5.

According to J & J, it entered into a license agreement with Golden Boy Promotions, LLC to distribute the closed-circuit telecast of the Event at closed-circuit locations, such as bars, throughout New York and other geographic locations.  Am. Compl. ¶ 7; ECF No. 22, Ex. B.  J & J alleges it "retains" the rights under the license agreement.  ECF No. 22-4 ¶ 3.  J & J alleges that Gary Joseph, an investigator retained by J & J, witnessed the Event being broadcast at Razor's Bar & Lounge on the night of the Event.  Am. Compl. ¶ 16.  Neither RK Soto nor Razor's Bar & Lounge had purchased a license to broadcast the Program.  Am. Compl. ¶ 13.  According to J & J, Defendants could only have received and broadcast the Event through illegal means.  See Am. Compl. ¶¶ 12, 34-35.

J & J further alleges that Ms. Soto "had a right and ability to supervise" the broadcast of the Event and "had an obvious and direct financial interest in the exploitation" of J & J's license of the Event.  Am. Compl. ¶¶ 5, 17, 18, 34.

### 1. Allegations Regarding The Communication Signal At Issue

According to J & J, the closed-circuit broadcast of the Event "was electronically coded or 'scrambled'" such that the signal needed to be "decoded with electronic decoding equipment to be received and broadcast."  Am. Compl. ¶ 12.  J & J contends that establishments which contracted to obtain the rights to broadcast the Event were "provided with electronic decoding equipment and satellite coordinates necessary to receive the signal of the Event."  Id. ¶ 14.  It also alleges that Defendants "modified electronic, mechanical, and/or another device to intercept electronic decoding equipment and satellite coordinates."  Id. ¶ 34.  J & J further alleges, upon information and belief, that "Defendants affected such interception or receipt of the Events through the use of illegal decoding devices; by the manipulation of the closed-circuit system authorized to carry the Events in the licensing area; by ordering the Events for residential locations and moving the decoder/converter box to Defendants' commercial locations, or by such other means unknown."  Id. ¶¶ 35, 50.  The Amended Complaint lists numerous ways in which Defendants could have intercepted the Event from either cable or satellite transmissions.  These allegations do not establish whether the Event was delivered via cable, satellite or otherwise.

In an apparent effort to bolster the allegations in the Amended Complaint, J & J includes additional information about the transmission in its default judgment motion.  In the affirmation of J & J's counsel, Paul J. Hooten, Mr. Hooten mentions "the cable service of the Event."  ECF No. 33 ¶ 10.  Confusingly, J & J's memorandum of law claims that the signal for the Event was a "satellite transmission."  ECF No. 32 at 3.  No further information is supplied regarding the type

of communication signal that Defendants are accused of intercepting and broadcasting without authorization.

### 2. The Investigator Affidavit

Attached as Exhibit D to the Amended Complaint, as well as to the affidavit of J & J's counsel, is a form investigation affidavit submitted by Gary Joseph, a private investigator. ECF No. 22-5; ECF No. 31 at 38-39. He swears that, on May 4, 2014, at 1:00 AM, he entered Razor's Bar and Lounge at 87 Central Avenue, Brooklyn, New York after paying a $15 cover charge, and left at 1:15 AM. ECF No. 31 at 38-39. He describes the establishment as being in "POOR" condition, and specifically makes note of distinguishing items, including "POOL TABLE NEAR ENTRACE, PUERTO RICO FLAG, BAR TABLES AND STOOLS ALONG THE LEFT WALL, PENDANT LIGHTS." Id. at 38. He claims to have ordered a "HEINEKEN" and observed "TWO" "27 [INCH] VIZIO TV'S" located "OVER THE BAR," on which he saw the Event with 1:13 remaining in the 10th round. Id. In the fifteen minutes, Mr. Joseph claims to have counted the number of patrons three times, each time noting that a total of 23 people were in the bar, while he states the capacity is approximately 60 people. Id. at 39.

No information is supplied as to whether he observed a cable box, satellite box or other potential source of interception and broadcast for the Event. There is no mention of whether there were changes to the price of food and drink offered by the bar in conjunction with the broadcast of the Event.

### B. Procedural History

On May 2, 2017, J & J timely commenced this action alleging that Defendants violated 47 U.S.C. §§ 553 and 605 by broadcasting the Event on May 3, 2014, at Razor's Bar & Lounge

without having obtained the rights to do so from J & J or its sub-licensee.[1]  See generally ECF

No. 1, Complaint.  J & J asserted seven causes of action: Count I for unauthorized interception

and broadcast of the Event in violation of 47 U.S.C. § 605(a); Count II for modifying electronic,

mechanical, or other device to intercept electronic decoding equipment and satellite coordinates

in violation of 47 U.S.C. § 605(e)(4); Count III for willfully intercepting and broadcasting the

Event for commercial advantage or financial gain in violation of 47 U.S.C. § 605(a); Count IV

for attorneys' fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B); Count V for unauthorized

interception and broadcast of the Event in violation of 47 U.S.C. § 553(a)(1); Count VI for

willfully intercepting and broadcasting the Event for commercial advantage or financial gain in

violation of 47 U.S.C. § 553(a)(1); and Count VII for attorneys' fees and costs pursuant to 47

U.S.C. § 553(c)(2)(C).  ECF No. 1, Complaint ¶¶ 21-64.

 J & J served Defendants shortly thereafter and filed the executed summonses with the

Court.  See ECF No. 7; ECF No. 8.  Defendants failed to answer or otherwise respond to the

Complaint by the response deadlines.  See ECF No. 10-1, Aff. for Judgment by Default ¶ 3.  J &

J requested and obtained a certificate of default as to Defendants from the Clerk of Court.   ECF

No. 10; ECF No. 11.  On October 2, 2017, J & J moved for default judgment.  ECF No. 15; ECF

No. 16; ECF No. 17. The motion was referred to this Court by District Judge Frederic Block.

Dkt. Entry 10/2/17.  The case was reassigned to District Judge William F. Kuntz, II, for all

further proceedings.  Dkt. Entry 8/13/19.

 This Court held conferences with J & J regarding the initial motion for default judgment.

Dkt. Entry 1/26/18; ECF No. 18; Dkt. Entry 6/11/18.  In these conferences, this Court advised J

---

[1] The courts in this District apply a three-year limitations period from the Copyright Act.  See J
& J Sports Prods., Inc. v. Barretta, No. 18 Civ. 5111 (NG) (ST), 2019 WL 7284249, at *1 n.1,
(Sept. 10, 2019), R&R adopted, 2019 WL 7283284 (E.D.N.Y. Dec. 27, 2019).

& J of its concerns regarding the proprietary of service upon RK Soto through "Jose Pena, Manager". Id. Upon these conferences, this Court issued an Order permitting J & J to withdraw the motion for default judgment with leave to refile. ECF No. 20. On June 11, 2018, J & J also filed a letter voluntarily withdrawing the motion for default judgment. ECF No. 21.

On July 2, 2018, without leave of Court, J & J filed the Amended Complaint interposing the same seven causes of action against Defendants.[2] Am. Compl. ¶¶ 22-65. On January 14, 2019, J & J filed an amended proposed summons and subsequently filed the executed summonses.[3] See ECF No. 24, Proposed Summons; ECF No. 26, Executed Summons for RK Soto; ECF No. 27, Executed Summons for Katherine Soto; ECF No. 28, Executed Summons for RK Soto.

---

[2] The Amended Complaint was not filed in accordance with Rule 15(a)(1) or (a)(2). See Fed. R. Civ. P. 15(a). It appears that the complaint was amended to include allegations regarding RK Soto's liquor license with the New York State Liquor Authority (compare ECF No. 1 ¶¶ 5, 16 with Am. Compl. ¶¶ 5, 17, Ex. A), to clarify the relationship between J & J and G&G Closed Circuit Events, LLC (compare ECF No. 1 ¶ 9 with Am. Compl. ¶ 9, Ex. C), to add allegations regarding Gary Joseph's visit to Razor's Bar and Lounge on the night of the Event (compare ECF No. 1 ¶ 16 with Am. Compl. ¶ 16, Ex. D), and to add allegations regarding how Defendants may have intercepted the Event (compare ECF No. 1 ¶ 34 with Am. Compl. ¶ 35). Given that the changes are not futile and do not unduly prejudice Defendants, this Court finds it appropriate to accept the filing of the Amended Complaint nunc pro tunc. See Zucker v. Porteck Global Servs., Inc., No. 13 Civ. 2674 (JS) (AKT), 2015 WL 6442414, at *4 (E.D.N.Y. Oct. 23, 2015) ("Amendments are generally favored as they tend to facilitate a determination on the merits."); Mendez v. U.S. Nonwovens Corp., 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014) (noting that motions to amend should be denied when they are founded in "undue delay, bad faith, futility, or prejudice to the non-moving party"). This Court finds that the Amended Complaint relates back to the original complaint pursuant to Rule 15(c)(1)(B) because the Amended Complaint sets forth the same conduct/occurrence set forth in the original complaint and asserts the same claims against the same Defendants. See Fed. R. Civ. P. 15(c)(1)(B); compare Am. Compl. with ECF No. 1.

[3] Pursuant to Rule 5(a)(2), J & J was not required to serve the Amended Complaint upon the Defendants who were in default. Fed. R. Civ. P. 5(a)(2). It appears that J & J requested an amended summons and re-served Defendants in order to address the concerns raised by this Court on J & J's first motion for default judgment. See Dkt. Entry 5/8/18; ECF No. 20. The Amended Complaint is now the operative pleading.

Defendants failed to answer or otherwise respond to the Amended Complaint by the response deadlines. ECF No. 29-1, Aff. for Judgment by Default ¶ 3. J & J requested and obtained certificates of default as to Defendants from the Clerk of Court. ECF No. 29; ECF No. 30. J & J again moved for default judgment. In its motion, J & J asks the Court to (i) find Defendants liable for violating §§ 605(a) and 553(a)(1); (ii) find Defendants liable for willfully violating §§ 605(a) and 553(a)(1); (iii) find Defendants liable for violating § 605(e)(4); (iv) award statutory damages of $3,463.85; (4) award additional treble statutory damages; and (5) award $595 in costs for the filing fee and expense of service of process. ECF No. 31, Mot. for Default at 3, 5, 6; ECF No. 32, Mem. for Default; ECF No. 33, Aff. for Judgment by Default. J & J does not seek attorneys' fees in its motion for default judgment. ECF No. 33, Aff. for Judgment by Default ¶ 30.

On July 22, 2019, this Court issued a Status Report Order directing Defendants to "respond in writing to the complaint and default motion within fourteen days of the date of this Order." Dkt. Entry 7/22/19. A copy of the Status Report Order and the docket was mailed to Defendants by this Court. Id.

On August 2, 2019, Ms. Soto briefly appeared in this case by filing a letter with attachments responding to the Status Report Order. ECF No. 34. In the letter, Ms. Soto denied J & J's allegations that patrons of Razor's Bar & Lounge were charged an admission for the Event or that any profit was made from broadcasting the Event, and she stated that the manager/DJ of the bar displayed the Event from his personal laptop. ECF No. 34. In the attached letter from Virginia Miller, the bartender at Razor's Bar & Lounge on the night of the Event, she seconded

7

Ms. Soto's statements and added that Ms. Soto was not involved in the decision to broadcast the

Event at Razor's Bar & Lounge.  ECF No. 34.[4]

Thereafter, this Court gave Defendants additional opportunities to participate in this

action.  Dkt. Entry 8/19/19, Scheduling Order; Dkt. Entry 8/23/19, Re-Scheduling Order; Dkt.

Entry 10/7/19.  Defendants nonetheless failed to appear for subsequent conferences, respond to J

& J's motion for default judgment, or answer or otherwise respond to the Amended Complaint.

Dkt. Entry 10/7/19; Dkt. Entry 10/21/19.  Now, having determined that Defendants do not intend

to participate any further in this action, this Court finds it appropriate to consider J & J's motion

for default judgment against Defendants for a report and recommendation.  Dkt. Entry 10/21/19;

ECF No. 36.

## II.    DISCUSSION

This Court is mindful of the troubling pattern of J & J's litigation tactics.  As summarized

in detail by Magistrate Judge Bulsara, courts have admonished J & J for a multitude of

procedural and substantive issues prevalent in its court filings:

> [F]ailures to serve the defendant with a complaint, to serve all the defendants
> against whom default is sought, to serve the authorized agent of a corporation as
> opposed to any employee, and to follow the Court's Local Rules for motions for
> default judgment, including by failing to attach time and cost records or other
> necessary documents, among other reasons. […] J & J has sought default
> judgment against individuals without alleging the necessary elements for
> imposing such liability, sought certificates of default against parties not named as
> defendants, served the incorrect parties, sought recovery under statutes without
> specifying the section of the statute allegedly violated, brought claims under
> statutes that prohibit interception of satellite communications without alleging the

---

[4] Ms. Soto's August 2019 submission raises questions regarding the veracity of the facts
presented in Mr. Joseph's investigator affidavit.  For example, Mr. Joseph states that he paid a
$15 cover charge, but Ms. Soto claims no one was charged an admission fee; Mr. Joseph also
states he observed two televisions in RK Soto, but Ms. Soto claims there is only one.  Compare
ECF No. 22-5 with ECF No. 34.  The submission is not a factor in this Court's analysis of J &
J's motion.

necessary element of such a claim, submitted affidavits, declarations and papers that contradict the allegations in the complaint, and alleged infringement of digital rights to programming that it may not own.

J & J Sports Prods., Inc. v. Ferreiras, No. 15 Civ. 6546 (ENV) (SJB), 2018 WL 6168557, at *1 (E.D.N.Y. Nov. 20, 2018).

Some of the same issues are present in this case. This Court will address each in turn.

**A. Legal Standard On A Motion For Default Judgment**

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step procedure by which a party may obtain a default judgment. See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 186 (2d Cir. 2015) (citing Fed. R. Civ. P. 55); Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, if a party has failed to plead or otherwise defend against an action, the Clerk of Court must enter a certificate of default by making a notation on the record. See Fed. R. Civ. P. 55(a). Second, after this entry of default, if the defaulting party still fails to appear or move to set aside the default, the court may enter a default judgment if the complaint is well-pleaded. See Fed. R. Civ. P. 55(b). The trial court has "sound discretion" to grant or deny a motion for default judgment. See Enron Oil, 10 F.3d at 95. In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Id. at 95-96 (recognizing "the responsibility of the trial court to maintain a balance between clearing its calendar and affording litigants a reasonable chance to be heard."). The court must therefore "ensure that (1) Plaintiff took all the required procedural steps in moving for default judgment pursuant to Local Civ. R. 55.2(c); and (2) Plaintiff's allegations, when accepted as true, establish liability as a matter of law." SAC Fund II 0826, LLC v. Burnell's Enters., Inc., 18 Civ. 3504 (ENV) (PK), 2019 WL

5694078, at *4 (Sept. 7, 2019), <u>R&R adopted</u>, 2019 WL 5956526 (E.D.N.Y. Nov. 13, 2019) (citing <u>Finkel v. Romanowicz</u>, 577 F.3d 79, 84 (2d Cir. 2009)); <u>see</u> <u>Bhagwat v. Queens Carpet Mall, Inc.</u>, 14 Civ. 5474 (ENV) (PK), 2017 WL 9989598, at *1 (E.D.N.Y. Nov. 21, 2017) ("A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules").

## B. Defects In Service Of The Amended Complaint

"A default judgment is ordinarily justified where a defendant fails to respond to the complaint." <u>SEC v. Anticevic</u>, No. 05 Civ. 6991 (KMW), 2009 WL 4250508, at *6 (S.D.N.Y. Nov. 30, 2009) (citing <u>Bermudez v. Reid</u>, 733 F.2d 18, 21 (2d Cir. 1984)). "Among other things, the moving party must demonstrate that entry of default is appropriate, which requires a showing that the nonappearing party was effectively served with process." <u>Sik Gaek, Inc. v. Yogi's II, Inc.</u>, 682 Fed. App'x 52, 54 (2d Cir. Mar. 10, 2017). To prove proper service, "the server should disclose enough facts to demonstrate the validity of service." 4B Charles Alan Wright & Arthur R. Miller, <u>Federal Prac. & Proc.</u> § 1130 (4th ed. 2019); <u>see</u> Fed. R. Civ. P. 4(l)(1). Generally, a process server's affidavit is prima facie evidence of proper service. <u>See</u> <u>Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.</u>, 301 F.3d 54, 57 (2d Cir. 2002). To qualify as satisfactory proof of proper service, an affidavit should disclose certain essential facts. <u>See</u> <u>Columbia Pictures Indus., Inc. v. Cap King</u>, No. 08 Civ. 4461 (NGG) (RML), 2010 WL 1221457, at *2 (E.D.N.Y. Mar. 29, 2010) (holding that a default judgment was inappropriate where the marshal's return did not specify the documents that the marshals served on the defendants).

This Court finds that J & J failed to demonstrate, by affidavits of service, effective service of process of the amended summons and Amended Complaint on either corporate

Defendant RK Soto or individual Defendant Ms. Soto.  This Court respectfully recommends that the motion for default judgment be denied because of these service deficiencies.

### 1.  Affidavits Of Service Do Not Establish Valid Service Of Process On RK Soto

J & J claims it served the amended summons and Amended Complaint on RK Soto by two methods, delivery to the New York Secretary of State and delivery to an agent of RK Soto. See ECF Nos. 26, 28.  Based on the record before this Court, there are concerns that neither method of service was properly executed.

J & J's affidavit of service fails to demonstrate effective service upon RK Soto via the New York Secretary of State under New York law.  Pursuant to Rule 4(h)(1)(A), service upon a corporation may be effected in the manner prescribed by Rule 4(e)(1) for serving an individual. Fed. R. Civ. P. 4(h)(1)(A).  Rule 4(e)(1) provides for service of process in accordance with the service rules of the state where the district court is located or where service is made.  Fed. R. Civ. P. 4(e)(1).  Section 311(a)(1) of the New York Civil Practice Law and Rules ("CPLR") permits personal service upon a corporation in accordance with section 306 of the business corporation law.  N.Y. C.P.L.R. 311(a)(1).  Section 306(b)(1) of the business corporation law ("BCL") in turn provides for service of process on the Secretary of State as agent of a domestic corporation "by personally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee."  N.Y. Bus. Corp. L. § 306(b)(1).  See Shanker v. 119 E. 30th Ltd., 63 A.D.3d 553, 554, 881 N.Y.S. 2d 98 (N.Y. App. Div. 1st Dep't 2009) ("Jurisdiction [is] obtained over [the] corporate defendant by service of process on the Secretary of State irrespective of whether the process ever actually reached defendant.").

Here, J & J served corporate Defendant RK Soto via New York Secretary of State by personally delivering to and leaving "a true copy of each" of "THE AMENDED SUMMONS IN A CIVIL ACTION AND AMENDED COMPLAINT" with "Sue Zouky, Authorized Person" at 99 Washington Avenue, Albany, New York.  ECF No. 28.  The affidavit of service by Thomas Arleo fails to specify whether, in accordance with the requirements under section 306(b)(1) of the BCL, he left two copies each of the amended summons and Amended Complaint with Ms. Zouky or paid the statutory fee.  See id.  Although an affidavit of a process server creates a presumption of proper service, see Old Republic Ins., 301 F.3d at 57, this Court cannot find on the face of the affidavit that J & J's service was consistent with the requirements of New York law.  See Byrnes v. Eltman Law, P.C., No. 18 Civ. 1485 (ADS) (AKT), 2019 WL 4578922, at *4 (Aug. 22, 2019) (finding that service of process via secretary of state was valid upon corporate defendant where affidavit of service demonstrated delivery of two copies of summons and complaint, along with fee of $40.00), R&R adopted, 2019 WL 4575380 (E.D.N.Y. Sept. 20, 2019).

J & J's affidavit of service also fails to demonstrate effective service upon RK Soto via a managing agent or authorized agent.  Rule 4(h)(1)(B) provides that service upon a corporation may be effected by delivering copies of the summons and complaint "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]"  Fed. R. Civ. P. 4(h)(1)(B).  Similarly, CPLR 311(a)(1) provides that service upon a corporation may be effected by delivering copies of the summons and complaint "to an officer, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service."  N.Y. C.P.L.R. 311(a)(1).  See Fed. R. Civ. P. 4(h)(1)(A) (permitting service upon a corporation in same manners for service upon an

individual); Fed. R. Civ. P. 4(e)(1) (permitting service in accordance with New York law).  Here, J & J claims to have served RK Soto by delivering copies of the amended summons and Amended Complaint to "Jose Pena, Manager" at 87 Central Avenue, Brooklyn, New York.  ECF No. 26.  The affidavit of service by John Hudak states that Mr. Pena is "a person known to be the authorized agent of said corporation, and who is authorized by said corporation to receive said documents."  Id.  Mr. Hudak's affidavit does not describe the basis of his knowledge.  See id.  This Court has previously expressed these same concerns about the validity of service of process of the summons and original Complaint upon RK Soto through "Jose Pena, Manager," which J & J failed to address.  Dkt. Entry 5/8/18; see ECF Nos. 7, 19.  This Court also cannot find on the face of the affidavit of service that "Jose Pena, Manager" is "a managing or general agent" or an authorized agent of RK Soto.  "A 'managing agent' is not a manager in the colloquial sense, i.e. a person whose role is to supervise the day-to-day work of other employees."  Feng Lin v. Quality Woods, Inc., No. 17 Civ. 3043 (DLI) (SJB), 2019 WL 1450746, at *5 (E.D.N.Y. Jan. 28, 2019).  To the contrary, a managing or general agent "must be invested with powers of discretion and must exercise judgment in his duties, rather than being under direct superior control as to the extent of his duty and the manner in which he executes it."  Grammenos v. Lemos, 457 F.2d 1067, 1073 (2d Cir. 1972) (citation omitted).  "To hold otherwise would essentially result in redefining the term 'managing agent' to mean any 'person of suitable age and discretion' employed by the defendant corporation."  Feng Lin, 2019 WL 1450746, at *5 (quoting Colbert v. Int'l Sec. Bureau Inc., 79 A.D.2d 448, 453, 437 N.Y.S.2d 360 (N.Y. App. Div. 1981 2d Dep't)) (internal quotation marks omitted).

Therefore, this Court respectfully recommends that J & J's motion for default judgment against RK Soto be denied on the basis of these service deficiencies.

### 2.    Affidavits Of Service Do Not Establish Valid Service Of Process On Ms. Soto

According to J & J, Ms. Soto was also served process by two methods: delivery to an individual of suitable age and discretion at her dwelling and delivery to an individual of suitable age and discretion at her place of business.  See ECF No. 27.  Once again, the affidavits of service fail to demonstrate effective service upon Ms. Soto via "suitable age and discretion."

Both federal and state law provide for service via "suitable age and discretion."  Under Rule 4(e)(2)(B), an individual may be served by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."  Fed. R. Civ. P. 4(e)(2)(B).  Under Section 308(2) of the CPLR, an individual may be served "within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend 'personal and confidential' and not indicating on the outside thereof . . . that the communication is from an attorney . . . such delivery and mailing to be effected within twenty days of each other . . . ." N.Y. C.P.L.R. § 308(2); see Fed. R. Civ. P. 4(e)(1) (allowing for service of process upon an individual in accordance with the service rules of the state where the district court is located).

The first affidavit of service of Mr. Hudak states that on January 23, 2019, at 10:23 AM, he served Ms. Soto at 9304 107th Street, Apartment 1, Richmond Hill, New York by delivering copies of the amended summons and Amended Complaint to "Jim Bouso, Stepson."  See ECF No. 27.  He also asked "Jim Bouso, Stepson" whether the premises was "defendant's actual place of abode, dwelling place or usual place of abode within the state and their reply was affirmative."

14

Id.  On January 25, 2019, Mr. Hudak followed up the delivery of the amended summons and Amended Complaint by mailing copies to Ms. Soto at 9304 107th Street "in an official depository under the exclusive care of the United States Postal Service within NY State."  Id.  These facts asserted in Mr. Hudak's affidavit of service are not sufficient to meet the requirements of "suitable age and discretion" service under Rule 4(e)(2)(B).  Indeed, Mr. Hudak does not state that Mr. Bouso was an individual who resides at 9304 107th Street, Apartment 1, at the time of service.  See Fed. R. Civ. P. 4(e)(2)(B) (requiring "suitable age and discretion" service upon a person "who resides" at the dwelling or abode).  For a different reason, the facts asserted in Mr. Hudak's affidavit of service are not sufficient to meet the requirements of "suitable age and discretion" under Section 308(2) of the CPLR.  Although the CPLR does not require that service be upon a person who resides at the dwelling, it requires follow-up mailing to be by "first class mail."  See N.Y. C.P.L.R. § 308(2); Gay v. Carlson, No. 89 Civ. 4757 (KMW), 1992 WL 309819, at *4 (S.D.N.Y. Oct. 15, 1992) ("[T]he service requirement of Section 308(2) are strictly construed."); Slutzky v. Aron Estates Corp., 597 N.Y.S.2d 997, 1001 (N.Y. Sup. Ct. 1993) ("If the mailing [under Section 308(2)] was not by first class, that is a defect which is fatal.").  Here, Mr. Hudak does not state that the amended summons and Amended Complaint were mailed via "first class mail."  See ECF No. 27.

The second affidavit of service of Mr. Hudak states that on January 26, 2019, at 8:17 PM, he served Ms. Soto at 87 Central Avenue, Brooklyn, New York by delivering copies of the amended summons and Amended Complaint to "Jose Pena, Manager, a person of suitable age and discretion."  ECF No. 27.  He also asked Mr. Pena whether the said premises was Ms. Soto's business within the state, and Mr. Pena replied affirmatively.  Id.  Mr. Hudak followed up the delivery of the amended summons and Amended Complaint by mailing copies on January 28,

2019 to Ms. Soto at 87 Central Avenue, Brooklyn, New York in an envelope bearing the legend "Personal & Confidential" and not indicating on the outside that the communication was from an attorney or concerned an action against Ms. Soto. Id. This service was presumably made under the CPLR because the FRCP does not provide an option for serving an individual at her place of business. See Fed. R. Civ. P. 4(e). The affidavit of service does not establish that Ms. Soto was served in conformity with the requirements under Section 308(2) of the CPLR. Mr. Hudak's affidavit does not state whether copies of the amended summons and Amended Complaint were mailed via "first class mail." See N.Y. C.P.L.R. § 308(2); Gay, 1992 WL 309819, at *4; Slutzky, 597 N.Y.S.2d at 1001.

Therefore, on the record before this Court, there are insufficient bases to find that J & J served process upon Ms. Soto by "suitable age and discretion" as required by Rule 4(e)(2)(b) or CPLR § 308(2). The fact that Ms. Soto informally appeared in this case in August 2019 does not excuse J & J from its obligations to serve process according to the Federal Rules. Dkt. Entry 7/22/19; ECF No. 34; see Fried v. N.Y.S. Office of Children & Family Svcs., 05 Civ. 5522 (NGG) (AKT), 2008 WL 4360749, at *8 (E.D.N.Y. Sept. 24, 2008) ("Notice received by means other than those authorized by statute does not bring a defendant within the jurisdiction of the court.") (quoting Macchia v. Russo, 496 N.E.2d 680, 682 (N.Y. 1986)).

### C. Defects In Service Of The Motion For Default Judgment

J & J's ineffective service of the motion for default judgment and supporting papers pursuant to the Local Rules similarly warrants denial. Local Rule 55.2(c) of the United States District Courts for the Southern and Eastern Districts of New York requires that "all papers submitted to the Court" in support of a motion for default judgment "shall simultaneously be mailed to the party against whom a default judgment is sought at the last known residence of

such party (if an individual) or the last known business address of such party (if a person other than an individual).  Proof of such mailing shall be filed with the Court."  Local Civ. R. 55.2(c). Service of the motion on non-appearing defendants is of particular importance because "mailing notice of such an application is conducive to both fairness and efficiency[.]"  Committee Note, Local Civ. R. 55.2; see Transatlantic Auto Grp., Inc. v. Unitrans-PRA Co., No. 08 Civ. 5070 (DLI) (CLP), 2011 WL 4543877, at *20 (Sept. 9, 2011) (noting the Local Rules relating to default provide more protection for non-appearing defendants than the Federal Rules of Civil Procedure to promote fairness and efficiency), R&R adopted, 2011 WL 4543838 (E.D.N.Y. Sept. 29, 2011).  Failure to comply with Local Rule 55.2 warrants denial of the motion for default judgment.  See Allstate Ins. Co. v. Abramov, No. 16 Civ. 1465 (AMD) (SJB), 2019 WL 1177854, at *3 (Feb. 21, 2019), R&R adopted, 2019 WL 1172381 (E.D.N.Y. Mar. 13, 2019).

Here, it appears that J & J generally complied with Local Rule 55.2 as to RK Soto.  In the Amended Complaint, J & J alleges that, "RK Soto Enterprises, Inc. d/b/a Razor's Bar & Lounge is [] authorized to transacting [sic.] business as 'Razor's Bar & Lounge' from its principal place of business located at 87 Central Avenue, Brooklyn, New York."  Am. Compl. ¶ 5.  According to the Certificates of Service filed by J & J, the motion for default judgment and supporting papers were mailed to RK Soto at 87 Central Avenue, Brooklyn, New York.  See ECF No. 31 at 7, Certificate of Service of Request to Enter Default Judgment, Affidavit in Support, Statement of Damages, Proposed Judgment; ECF No. 32-6, Certificate of Service of Memorandum of Law; ECF No. 33-4, Certificate of Service of Affirmation in Support.  Even though that address is not the address listed for RK Soto on the Secretary of State's website,[5] this Court accepts as true J &

---

[5] Dep't of State, Div. of Corps., State Records & UCC, Corp & Bus. Entity Database Searches, https://www.dos.ny.gov/corps (last visited Jan. 17, 2020).  It is appropriate for the court to take judicial notice of information from the New York Secretary of State's website.  J & J Sports

J's allegations that RK Soto transacted business at 87 Central Avenue.  Thus, for purposes of Local Rule 55.2(c), 87 Central Avenue was the proper mailing address for RK Soto.

As for Ms. Soto, it also appears that J & J generally complied with Local Rule 55.2. According to the Certificates of Service filed by J & J, the motion for default judgment and supporting papers were mailed to Ms. Soto at 9304 107th Street, Apartment 1, Richmond Hill, New York.  See ECF No. 31 at 7, Certificate of Service of Request to Enter Default Judgment, Affidavit in Support, Statement of Damages, Proposed Judgment; ECF No. 32-6, Certificate of Service of Memorandum of Law; ECF No. 33-4, Certificate of Service of Affirmation in Support.  J & J does not assert anywhere that 9304 107th Street is Ms. Soto's last known residence, but the concern of proper notice is met here because Ms. Soto admitted that she received other papers mailed to that address by this Court.  See ECF No. 34.

Despite J & J's proper mailing of its default judgment papers, this Court is concerned by J & J's lack of precision exhibited in the proof of mailing filed with the Court: the lack of date on Ms. Lorefice's Certificate of Service of Request to Enter Default Judgment (ECF No. 31 at 7), the lack of notarization or declaration under penalty of perjury in that same document (id.), and the lack of notarization or declaration under penalty of perjury in Ms. Lorefice's Certificate of Service of the Memorandum of Law (ECF No. 32-6).[6]  The omission of the date of service is not one this Court can correct, since this Court has no personal knowledge of the date the documents

---

Prods., Inc. v. La Parranda Mexicana Bar & Restaurante Co., No. 17 Civ. 4171 (AMD) (SJB), 2018 WL 4378166, at *1 n.3 (E.D.N.Y. Apr. 9, 2018).

[6] Ms. Lorefice does not appear to be an attorney admitted to practice law in the State of New York according to the website of the New York State United Court System.  New York State Unified Court System, eCourts, Attorney Search, https://iapps.courts.state.ny.us/attorney/captcha (last visited Jan. 23, 2020); see also Himmelfarb v. Nat'l Bureau Collection Corp., No. 17 Civ. 4744 (MKB) (PK), 2018 WL 4921662, at *3 (E.D.N.Y. Aug. 10, 2018) (noting court's ability to take judicial notice of attorney registration) (citation omitted).

were served.  See Fed. R. Civ. P. 60(1) (allowing the court to correct a clerical mistake).  In addition, as stated above, Local Rule 55.2(c) requires "[p]roof of such mailing."  Local Civ. R. 55.2(c).  This Court interprets the rule to require proof of mailing by affidavit because the next sentence requires a "supplemental affidavit" to be filed for any returned mailing.  See id.; see also Gundy v. United States, 139 S. Ct. 2116, 2126 (2019) (noting a fundamental canon of construction that words be read in their context); Black's Law Dictionary 68 (10th ed. 2014) (defining "affidavit" to mean "[a] voluntary declaration of facts written down and sworn to by a declarant [usually] before an officer authorized to administer oaths.").  Thus, these certificates should have been sworn to by Ms. Lorefice.  Otherwise, Ms. Lorefice should have made the certifications "under penalty of perjury."  See 28 U.S.C. § 1746 (allowing unsworn certification to have "like force and effect" where it is "subscribed by him, as true under penalty of perjury, and dated" and in substantially the forms provided by the statute).  This Court finds that these certificates, then, have no legal force to evidence or prove that J & J complied with the Local Rule.

On the additional basis of J & J's failure to comply with the Local Rules, this Court respectfully recommends that the motion for default judgment be denied.

## D.  Default Judgment Factors

When determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside an entry of a default.  See Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 170-71 (2d Cir. 2001); Enron Oil, 10 F.3d at 96.  These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether a meritorious defense has been presented.  See Swarna v. Al-awadi, 622 F.3d 123, 142 (2d Cir. 2010); Enron Oil, 10 F.3d at 96.

In light of J & J's failure to serve process on both Defendants and its failure to comply with the Local Rules, this Court will not determine whether J & J is able to satisfy these three procedural factors for entering default judgment against Defendants.

**E. Defendants' Liability For Violation Of The FCA**

Although entry of a default judgment is not warranted because of the procedural deficiencies discussed above, this Court will nevertheless consider whether the facts alleged in the Amended Complaint establish Defendants' liability under the alleged claims.

"A court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment. Rather, the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." Bricklayers, 779 F.3d at 187. A default is a concession of all "well pleaded" factual allegations of liability in the complaint. Id. (citation omitted). The question is thus whether the allegations in the Amended Complaint, if accepted as true, establish liability for the J & J's claims. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (noting that "a district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action").

Here, J & J alleges that Defendants violated Sections 605 and 553 of the FCA, and seeks damages under both statutes. Even accepting J & J's allegations in the Amended Complaint as true, this Court finds that J & J fails to sufficiently plead liability against Defendants.

**1. J & J Fails To Sufficiently Plead Defendants' Liability Under Either Section 605(a) Or Section 553(a) Of The FCA**

J & J alleges that Defendants willfully intercepted or received communication of the Event then broadcast the communication of the Event to patrons of Razor's Bar & Lounge. Am.

Compl. ¶ 15. J & J's failure to plead the type of communication signal that Defendants willfully intercepted and broadcasted is fatal to its motion.

Section 605(a) of the FCA prohibits the unauthorized interception and use of any "radio communication." 47 U.S.C. § 605(a). Courts have held that the term "radio communication" includes "satellite transmission." J & J Sports Prods., Inc. v. Nacipucha, No. 17 Civ. 1197 (AMD) (SJB), 2018 WL 2709222, at *3 (May 18, 2018), R&R adopted, 2018 WL 2709200 (E.D.N.Y. June 5, 2018); Garden City Boxing Club, Inc. v. Focused Enters., Ltd., 2007 WL 165547, at *2 (E.D.N.Y. June 6, 2007) ("Because [plaintiff] alleges that the Event was conveyed via satellite transmission, it has properly pleaded a claim under Section 605(a).") (citing Int'l Cablevision v. Sykes, 75 F.3d 123, 131, 131 n.5 (2d Cir. 1996); Traffic Sports USA v. La Camisa Negra Rest. & Bar Corp., No. 11 Civ. 1475 (ARR) (RLM), 2012 WL 3064129, at *2 (May 23, 2012) (noting that courts in this district have held that "where . . . at least part of the [e]vent's transmission was produced by satellite, the defendant's interception of the [e]vent violates 47 U.S.C. § 605(a)."), R&R adopted, 2012 WL 3065523 (E.D.N.Y. July 27, 2012). Section 605(a) has also applied to thefts of cable communications "provided that the cable programming originated as a radio or satellite communication." Paucar, 2018 WL 4501057, at *4; Sykes, 75 F.3d at 131-32.

On the other hand, Section 553 prohibits the unauthorized interception of "any communications service offered over a cable system." 47 U.S.C. § 553(a)(1).

To state a claim under either section 605 or 553 of the FCA, a plaintiff must allege specifically what type of communication signal the defendant intercepted or broadcast without authorization: radio, satellite or cable. See J & J Sports Prods., Inc. v. Abdelraouf, No. 18 Civ. 2547 (ARR) (VMS), 2019 WL 457719, at *3 (E.D.N.Y. Feb. 5, 2019) (noting that in this circuit,

"a plaintiff need not allege how the defendant actually received the signal" but only that the intercepted communication "originated via satellite" or other radio communication); Nacipucha, 2018 WL 2709222, at *8 (noting that without an allegation that the event was offered over a cable system, "There can be no liability under § 553(a)(1)."). That is, "[t]he type of signal that carried the communication is a necessary element of a cause of action under § 605(a) or § 553, without which no liability may be found, and no relief may be granted." J & J Sports Prods., Inc. v. Boodram, No. 18 Civ. 5087 (NGG) (SMG), 2019 WL 6388811, at *2 (June 24, 2019), R&R adopted, 2019 WL 4463352 (E.D.N.Y. Sept. 18, 2019).

Here, J & J fails to allege whether the Event originated as a radio, satellite or cable signal. The only allegation regarding the type of communication signal appears in a paragraph in the Amended Complaint, wherein J & J refers to "the interstate communication of the Event." Am. Compl. ¶ 15. Instead, J & J alleges that the transmission of the Event was electronically coded or scrambled. Id. ¶ 12. J & J also mentions that electronic decoding equipment and satellite coordinates were necessary to receive the signal for the Event. Am. Compl. ¶ 14. These other factual allegations cannot be construed to allege the type of communication signal under either Section 605(a) or Section 553(a).[7] See Ferreiras, 2018 WL 6168557, at *6 ("The reference to

---

[7] Some courts in this District have credited such allegations regarding a "coded" signal or "satellite coordinates" to mean that the event was transmitted by radio communication or over cable system. See, e.g., His & Hers Bar & Lounge Inc., 2018 WL 4925706, at *3 ("Although the complaint does not allege that [defendant] intercepted a satellite signal, the complaint does allege that electronic decoding equipment and satellite coordinates were necessary to receive the signal for the event. These allegations are sufficient to establish [defendant's] liability under Section 605."); Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc., 804 F. Supp. 2d 108, 112 (E.D.N.Y. 2011) (finding that coded or scrambled transmission of Event requiring electronic decoding equipment and satellite coordinates was sufficient to allege violation of Sections 553 and 605). As observed by Magistrate Judge Bulsara in Ferreiras, these cases all relied on the same case – Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438, 440 (S.D.N.Y. 2001) – that drew the conclusion without providing any reason or explanation for doing so. See Ferreiras, 2018 WL 6168557, at *6 (noting that this approach is "erroneous").

'satellite coordinates' is simply not a statement that the Event that was intercepted and broadcast at [defendant's establishment] was a satellite transmission.").

This Court agrees that reference to "satellite coordinates" is not the equivalent of an allegation that the Event originated via satellite transmission.  See id.  By that same logic, a reference to a "coded" or "scrambled" signal also is not the equivalent of an allegation that the Event originated as a radio, satellite or cable signal.  Even though J & J's factual allegations are to be accepted as true on a motion for default judgment, Bricklayers, 779 F.3d at 187, it does not require this Court to read factual allegations into a complaint where they do not exist.  See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) ("[A] default does not … excuse any defects in the plaintiff's pleading.").  This is especially true here where J & J has had repeated notice of the Court's concerns as to the sufficiency of its pleadings.  For example, as noted previously by this Court, it would be simple for J & J to allege how the communication was transmitted.  See Paucar, 2018 WL 4501057, at *5.  In fact, in other cases, J & J clearly alleges the type of communication signal that was intercepted by defendant.  See, e.g., J & J Sports Prods., Inc. v. Enriquez, No. 19 Civ. 2384 (ERK), 2019 WL 4963108, at *2 (E.D.N.Y. Oct. 7, 2019) (alleging the event at issue "originated via a satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal").

This Court notes that the papers submitted in support of J & J's motion for default judgment cannot be used to remedy the defects in the Amended Complaint as courts in this District have rejected that argument time and time again.  See, e.g., Abdelraouf, 2019 WL 457719, at *4 (E.D.N.Y. Feb. 5, 2019) ("Plaintiff's assertion that a court may consider documents outside of the pleadings when evaluating a defendant's liability on a motion for default judgment is plainly contradicted by black-letter law."); Boodram, 2019 WL 4463352, at

23

*3 (E.D.N.Y. Sept. 18, 2019) ("To prevail on a motion for default judgment, the factual

allegations in the complaint must themselves be sufficient to establish a right to relief.") (internal

quotation marks & citation omitted).  In any event, even if the "allegations" proffered by J & J in

its motion papers could be considered, they are problematic for J & J.  In the affirmation of Mr.

Hooten, J & J states that the Event originated via "cable service" but in its memorandum of law,

J & J claims that the Event originated by "satellite transmission."  Compare ECF No. 33 ¶ 10

with ECF No. 32 at 3.  Such statements are contradictory, not pled in the alternative.  "To

actually plead in the alternative, J & J has to plead facts in the alternative."  Ferreiras, 2018 WL

6168557, at *9; see Abdelraouf, 2019 WL 457719 at *3 ("This 'buckshot approach' to pleading

is insufficient to plead any individual claim in the alternative.") (citation omitted).

Absent any allegation in the Amended Complaint that the Event originated as a satellite

or radio communication, or a wire or cable communication, there is no basis to find Defendants

liable under Section 605 or Section 553.

### 2.  J & J Fails To Plead Sufficiently Defendants' Liability Under Section 605(e)(4)

According to J & J, Defendants "modified" electronic, mechanical and/or another device.

Am. Compl. ¶ 34.  Defendants also allegedly "use[d] illegal decoding devices,"

"manipulate[ed]… the closed-circuit system authorized to carry the Events" or "order[ed] the

Events for residential locations and remov[ed] the decoder/converter box to Defendants'

commercial locations."  Am. Compl. ¶¶ 35, 50.  These allegations fall short of establishing

liability under Section 605(e)(4).  Section 605(e)(4) provides, in pertinent part, that:

> Any person who manufactures, assembles, modifies, imports, exports, sells, or
> distributes any electronic, mechanical, or other device or equipment, knowing or
> having reason to know that the device or equipment is primarily of assistance in
> the unauthorized decryption of satellite cable programming, or direct-to-home
> satellite services, or is intended for any other activity prohibited by subsection

24

(a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both.

47 U.S.C. § 605(e)(4).

As explained by Magistrate Judge Bulsara, the intent of this statutory provision is to target the "upstream manufacturers and distributors, not the ultimate consumer of pirating devices." Ferreiras, 2018 WL 6168557, at *8 (internal quotation marks & citation omitted). That is, the statute is not meant to apply to users of unauthorized decryption equipment. Id. Further, the manipulation or modification of the equipment by a consumer does not fall within the ambit of the statute. Id. (relying on DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854-55 (9th Cir. 2007)).

Nothing in the Amended Complaint suggests that Defendants fall within this paragraph as to the unauthorized decoding or decryption equipment. At most, J & J alleges that RK Soto and Ms. Soto are consumers and users of such equipment. Thus, J & J has failed to establish as a matter of law Defendants' liability under Section 605(e)(4).

### 3.  J & J Fails To Sufficiently Plead Individual Liability Against Ms. Soto

J & J also seeks to impose individual liability on Ms. Soto. Besides the failures discussed above, J & J cannot overcome additional obstacles to imposing liability on Ms. Soto.

There are two methods of proving individual liability: contributory infringement or vicarious liability. An individual defendant is liable for contributory infringement when he or she authorizes an infringement. See J & J Sports Prods., Inc. v. LDG Williams, LLC, No. 11 Civ. 2145 (KAM), 2011 WL 5402031, at *5-6 (E.D.N.Y. Nov. 7, 2011); see also EMI Christian Music Grp., Inc. v. MP3tunes, LLC, 844 F.3d 79, 99-100 (2d Cir. 2016) ("A contributory infringer is one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.") (internal quotation marks & citation omitted).

An individual defendant is vicariously liable for an infringement when the individual "had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials." J & J Sports Prods., Inc. v. Tellez, No. 11 Civ. 2823 (SMG), 2011 WL 6371521, at *3 (E.D.N.Y. Dec. 20, 2011) (alteration in original); EMI Christian Music Grp., 844 F.3d at 99.

In order to impose individual liability, there must be an underlying violation. See, e.g., Abdelraouf, 2019 WL 457719, at *5 ("[T]he individual defendant cannot be held liable for any role that he allegedly played in authorizing or encouraging an underlying violation that plaintiff has failed to properly plead."); Nacipucha, 2018 WL 2709222, at *6 ("[W]ithout [the corporate defendant's] presence in the case, and liability imposed on [the corporate defendant], no one . . . could be indirectly or vicariously liable.") (citation omitted); Restatement (Third) of Agency § 7.03 (2006) ("[A] principal's vicarious liability turns on whether the agent is liable.").

Here, for the reasons stated above, RK Soto cannot be held liable for violation of either Section 605 or Section 553. With no liability imposed on the corporate Defendant, no contributory or vicarious liability can be imposed on Ms. Soto.

Even if RK Soto were liable, a closer look at J & J's allegations against Ms. Soto reveals that they are insufficient to support a claim for liability. Indeed, J & J seeks individual liability against Ms. Soto by alleging that she: (i) was an "officer, director, shareholder and/or principal" of RK Soto; (ii) was "responsible directly for the telecast of the [E]vent"; (iii) "had a right and ability to supervise the infringing activities of employees of the establishment"; and (iv) "had an obvious and direct financial interest in the exploitation of the copyrighted materials." Am. Compl. ¶¶ 5, 17, 18, 34, 50. These are recitations of the same boilerplate language necessary to plead the elements of contributory and vicarious liability. "A formulaic recitation of the

elements of a cause of action is insufficient to establish liability, even on default." Ferreiras, 2018 WL 6168557, at *11 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (holding that "the conclusory allegations parroting the elements of vicarious liability do not establish [the individual defendant's] liability."); see Nacipucha, 2018 WL 2709222, at *6 ("[T]he conclusory allegations parroting the elements of vicarious liability do not establish Defendant's liability."); cf. Circuito Cerrado, 804 F. Supp. 2d at 113 (citing cases for proposition that "mere ownership" is insufficient to support a finding of individual liability").  Magistrate Judge Bulsara's comprehensive opinion cites to several cases brought by J & J wherein its motion for individual liability in default judgment motions were denied for the same vague, conclusory and boilerplate pleading.  Id. (citing cases).  These cases all underscore the important point that "something more" is required to establish individual liability under the FCA.  That cannot be found in the Amended Complaint here.

Indeed, the Amended Complaint fails to identify any actions specifically taken by Ms. Soto in violation of Section 605(a) or Section 553(a).  J & J's allegations against Ms. Soto, in comparison to the allegations against RK Soto, merely recite the elements of individual liability with no other facts showing that Ms. Soto authorized, supervised or was present for the infringing activities.  Even though Mr. Joseph visited RK Soto during the broadcast of the Program and interacted with the bartender on the premises at the time, he did not adduce evidence that Ms. Soto had knowledge of, was present for, or played any role in intercepting or broadcasting the Event.

J & J's additional allegation that Ms. Soto was listed as a principal on the establishment's New York Department of State, Liquor Authority license also fails to establish liability as to Ms. Soto.  See Am. Compl. ¶ 5; ECF No. 22-2.  This Court finds persuasive the well-reasoned

decision of Magistrate Judge Orenstein in J &J Sports Prod., Inc. v. El Ojo Aqua Corp., No. 13

Civ. 6173 (ENV) (JO), 2014 WL 4700014 (Aug. 29, 2014), R&R adopted, 2014 WL 4699704

(E.D.N.Y. Sept. 22, 2014).  In that case, Judge Orenstein observed that the individual

defendant's name on the liquor license "suggests that [the individual defendant] had the general

ability to supervise the establishment's operations and enjoy its profits, but it does nothing to

suggest either that [the individual defendant] had anything to do with the decision to display the

Event on [the] television screens or that [she] had an obvious and direct financial interest in the

exploitation of the Event."  Id. at *4.  While he noted that J & J's investigator paid a cover

charge, Judge Orenstein also noted that "he had no idea whether that establishment did or did not

impose the same entry fee at other times as well."  Id. at *4 n.3.  On this basis, and others, Judge

Orenstein held that he had "no basis to conclude that [the individual defendant] had any financial

interest at all, let alone an obvious and direct one, in the exploitation of the Event."  Id.; accord

Joe Hand Promotions Inc. v. Ruiz, No. 18 Civ. 1908 (WQH) (AGS), 2019 WL 5963682, at *5

(S.D. Cal. Nov. 13, 2019) (finding that defendant's name appearing on the liquor license is

insufficient to subject him to liability where "[t]here is no evidence that the liquor license was

used to facilitate a violation of 47 U.S.C. § 605(a); 47 U.S.C. § 553[.]").

    Likewise, this Court finds on the facts before it that, at most, the liquor license suggests

that Ms. Soto had the general ability to supervise the establishment's operations and enjoy its

profits, but it does not suggest that Ms. Soto was involved in the decision to broadcast the Event

at Razor's Bar & Lounge or had an obvious and direct financial interest in the exploitation of the

Event.  Although Mr. Joseph also claims to have paid a $15 cover charge and ordered a

Heineken drink, J & J does not offer evidence as to whether Razor's Bar & Lounge had the same

entry fee on other nights or charged premiums for food and drinks on the night of the Event.  See

ECF No. 22-5; ECF No. 31 at 38-39.[8]  See also Paucar, 2018 WL 4501057, at *7 ("Without some allegation that connects the liquor license to profit gained by the Event broadcast – such as, for example, a higher than usual attendance [], the increased sale of alcohol or food during the Event broadcast, or some promotion between an alcohol sold at the bar and the Event broadcast – there is no meaningful relationship between the liquor license, the alleged violations, and [the individual defendant.").  As such, Ms. Soto's name on the liquor license cannot establish individual liability.

## III.  CONCLUSION

Due to the procedural and substantive deficiencies discussed above, it is respectfully recommended that the motion for default judgment be denied, and that the Amended Complaint be dismissed without prejudice.  The Court further recommends that J & J be given 30 days to replead.

## IV.  OBJECTIONS

This report and recommendation will be filed electronically.  Chambers will mail a copy of this report and recommendation to RK Soto Enterprises, Inc. d/b/a Razor's Bar & Lounge, 87 Central Avenue, Brooklyn, New York 11221; RK Soto Enterprises, Inc., 368 Evergreen Avenue, Brooklyn, New York 11221; and Katherine Soto, 9304 107th Street, Apartment 1, Richmond Hill, New York 11418.

Written objections to this report and recommendation must be filed within 14 days of service and in accordance with the Individual Rules of the District Judge.  28 U.S.C. § 636(b)(1);

---

[8] Although Ms. Soto's submission states that she was not involved in the decision to broadcast the Event and that there was no cover charge, this Court treats the submission as though it were a stricken answer and accepts J & J's factual allegations as true as it is required to do on a motion for default judgment.

Fed. R. Civ. P. 72(b).  Failure to file objections within the specified time waives the right to appeal.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); <u>see</u> <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: Brooklyn, New York
      February 7, 2020

_____*Vera M. Scanlon*_____
VERA M. SCANLON
United States Magistrate Judge

30